UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FREDERICK OMOYUMA SILVER,

        Plaintiff,

v.                                    Case No. SA-19-MC-1490-JKP

CITY OF SAN ANTONIO,
CHRISTOPHER DARRYL CUMMINGS,
and JOHN DOE,[1]

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration a *Request and Order to File New Litigation by Vexatious Litigant in Western District Court* (ECF No. 1); a *Motion on Case Status* (ECF No. 2); *Plaintiff's Motion to Amend Case Caption* (ECF No. 3); and *Plaintiff's Motion for Action on this Case* (ECF No. 4). The second and fourth motions essentially seek to compel court action on the first filing. The third motion seeks to list Christopher Darryl Cummings ("Officer Cummings") as the first defendant. The Court denies each of the three latter motions as unnecessary.

In his two-page request, which the Court liberally construes as a motion, putative Plaintiff Frederick Omoyuma Silver ("Silver") explains that the Court previously deemed him a vexatious litigant and he thus must obtain judicial approval before filing new litigation without representation from an attorney. Request at 1. He has attached a copy of the complaint that he seeks to file and asserts that it has merit because Officer Cummings exceeded his authority and jurisdiction and acted in concert with the City of San Antonio. *Id*. He also lists an unidentified officer as a "John

---

[1] Although the caption of the proposed Original Complaint confusingly identifies "City of San Antonio, Bexar Texas," the body of the complaint clarifies that Silver is not attempting to sue Bexar County separately from the City. Furthermore, while Silver uses "Cummings Christopher Darryl" he provides documents that clearly show that defendant as "Christopher Darryl Cummings." Finally, the proposed complaint includes a "John Doe" defendant that is not listed on the docket of this action.

Doe" defendant. Orig. Compl. ¶ 3.

Because Silver cannot file his proposed civil action without leave of court, it is his burden to persuade the Court that it should allow his proposed filing to commence a new civil action. As detailed more in depth later, to carry that burden, a sanctioned litigant must generally show that the claims sought to be asserted have sufficient merit; that each defendant is properly included in the litigation; that the proposed filing is both procedurally and legally sound; that there is no obvious defense to asserted claims; that the claims are not brought for any improper purpose, such as harassment; and that the motion for leave as well as the proposed pleading complies with all relevant requirements set out in prior sanctions. Whether to grant or deny the requested leave is a matter within the Court's sound discretion. Upon review of the motion for leave, the proposed complaint, and attachments thereto, the Court exercises its discretion to deny the requested leave for the reasons stated herein.

## I. SANCTION AND PERTINANT LITIGATION HISTORY

On April 18, 2019, the Honorable District Judge Xavier Rodriguez of this Court accepted a recommendation that the Court dismiss the then pending action filed by Silver as frivolous, deem Silver a vexatious litigant, and impose sanctions. *See Silver v. Bemporad*, No. SA-19-CV-0284-XR, 2019 WL 1724047, at *1-4 (W.D. Tex. Apr. 18, 2019), *appeal dismissed*, No. 19-50339 (5th Cir. July 15, 2019). Before recommending that Silver be sanctioned as a vexatious litigant, the Magistrate Judge recited Silver's litigation history, which at that time included multiple cases "filed in the past few years, all of which have been dismissed at the pleadings stage." *Silver v. Bemporad*, No. 5-19-CV-00284-XR-RBF, 2019 WL 1546963, at *4 (W.D. Tex. Apr. 9, 2019) (recommendation of Mag. J.) (citing *Silver v. Towner*, No. 5-17-CV-1135-DAE (W.D. Tex. filed Nov. 7, 2017); *Silver v. Salazar*, No. 5-18-CV-1-XR (W.D. Tex. filed Nov. 2, 2018); *Silver v. Perez*, No. 5-18-CV-1307-FB (W.D. Tex. filed Dec. 13, 2018); *Silver v. Toyota Motor Mfg. Tex.*

2

*Inc.*, No. 5-18-CV-171-FB (W.D. Tex. filed Feb. 20, 2018); *Silver v. SAPD*, No. 5-19-CV-7-XR

(W.D. filed Jan. 4, 2019)) *accepted by* 2019 WL 1724047 (W.D. Tex. Apr. 18, 2019)).

Based on "a review of the totality of Silver's filings in this case—as well as in seven other

cases," the Magistrate Judge found "that Silver is a vexatious litigant whose frivolous filings pose

an unwarranted burden on the Court." *Id*. at *1. The Magistrate Judge thus recommended that "the

District Court ENJOIN Silver from filing further lawsuits in this judicial district without prior

leave from a district judge of this district" and that he "be WARNED that further frivolous filings

in any new or pending case may result in the imposition of monetary sanctions." *Id*. The District

Court accepted the recommendations and issued the following orders:

> Plaintiff is further **ENJOINED from filing any civil lawsuit in the San Antonio Division of the United States District Court for the Western District of Texas unless he first seeks leave and obtains permission from a district judge in this district.** Before filing any new lawsuit in this district and division, Silver must file a motion for leave to file the action, along with a proposed complaint, which motion shall be randomly assigned to a Judge in the division for disposition. The Clerk is instructed to not accept any new lawsuit filed by Silver in this division unless and until such motion is filed and granted.

> Because Silver has other pending litigation in this Court and may have future cases removed to this Court, he is also **WARNED that further frivolous filings or motions in those pending cases or any future filed or removed case may also result in the imposition of monetary sanctions.**

*Silver v. Bemporad*, No. SA-19-CV-00284-XR, 2019 WL 1724047, at *4 (W.D. Tex. Apr. 18,

2019). Contrary to Silver's interpretation, nothing within the sanction order limits the prefiling

injunction to future cases Silver seeks to pursue without counsel. However, the presence of counsel

for Silver would likely impact the review of any motion for leave to proceed with the new proposed

litigation.

**A. Subsequent District Court Civil Actions**

After the imposition of sanctions, the Honorable District Judge David A. Ezra recognized

Silver as "a vexatious litigant who continuously engages in frivolous motions practice in this

Court." *Silver v. Bexar County District Attorney Office*, No. 5-19-CV-0337-DAE, unpub. order at 3 (W.D. Tex. June 6, 2019) (citing same cases noted above). In that order, Judge Ezra found Silver's motion to remand frivolous, found some asserted claims barred by res judicata, and denied a motion to amend because it found "that allowing Plaintiff yet another opportunity to cure his pleadings is unwarranted and futile" and because Silver had filed the action in bad faith by asserting "the same or nearly the same pleadings . . . at least twice" and they had been dismissed. *Id*. at 7-10. On that same date in a separate case, Judge Ezra also recognized Silver as a vexatious litigant, found a motion to remand frivolous, denied a motion to amend as filed in bad faith, unwarranted, and futile. *Silver v. City of San Antonio*, No. 5:19-CV-0349-DAE, unpub. order at 3-12 (W.D. Tex. June 6, 2019) (citing same cases noted above).

Silver found himself back in the Western District of Texas when a state action commenced by him was removed to the Austin Division and subsequently transferred to the San Antonio Division. *See Silver v. Bexar County Sheriff's Office*, No. 1:19-CV-0474-RP, unpub. order (W.D. Tex. May 23, 2019) (ECF No. 10 transferring case). This transfer resulted in Case No. 5:19-CV-0561-DAE. Judge Ezra again recognized Silver as a vexatious litigant, noted that the lawsuit "is nearly identical to several lawsuits brought by Plaintiff in this Court," found Silver's motion to remand frivolous, and granted various motions to dismiss. *Silver v. Bexar County Sheriff's Office*, Case No. 5:19-CV-0561-DAE, unpub. order (W.D. Tex. June 26, 2019) (ECF No. 19). As to various unserved defendants, the Court ultimately dismissed the action and entered judgment on August 19, 2019. *See id.* (ECF Nos. 29-30).

Silver, furthermore, has branched out beyond the Western District of Texas. *See Silver v. Rausch Sturm Israel Enerson & Hornik LLP*, No. SA-20-CV-0101-OLG, unpub. recommendation at 1 (W.D. Tex. Mar. 5, 2020) (recommendation of Mag. J. (ECF No. 9)) (noting that case had been transferred into the Western District from the Northern District of Texas), *adopted by* unpub.

order (W.D. Tex. Mar. 18, 2020) (ECF No. 14). Because Silver sought to proceed *in forma pauperis*, the transferred case was automatically referred to the Magistrate Judge per standard procedures, resulting in a recommendation that the Court deny Silver leave to proceed *in forma pauperis* and dismiss the case without prejudice for failure to comply with the prefiling injunction. *Id*. The Magistrate Judge explained that "to proceed as a plaintiff in a lawsuit in this district, Plaintiff must comply with the prefiling injunction that is in place such that the Court can determine whether he should be allowed to proceed in federal court." *Id*. at 2. The Magistrate Judge further explained that Silver "cannot avoid this prefiling injunction by first filing a lawsuit in another federal district and then having that case transferred to this Court." *Id*.

**B. <u>Relevant Appellate Rulings and Orders</u>**

On March 25, 2020, and April 6, 2020, the Fifth Circuit denied motions for leave to proceed *in forma pauperis* on appeal filed by Silver, dismissed the appeals as frivolous, and warned Silver "that future frivolous, repetitive, or otherwise abusive filings will invite the imposition of sanctions, which may include dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction." *Silver v. City of San Antonio*, 799 F. App'x 254, 255 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0349); *Silver v. Bexar Cty. Sheriff's Office*, 800 F. App'x 265, 266 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0561). On April 14, 2020, the Fifth Circuit again denied Silver leave to proceed *in forma pauperis* and dismissed his appeal as frivolous. *Silver v. Toyota Motor Mfg., Texas, Inc.*, 801 F. App'x 304, 305 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0422).

**C. <u>Attempts to Obtain Leave to File</u>**

On six occasions since the imposition of the prefiling injunction, Silver has sought leave to proceed with a new civil action. Each filing has resulted in the opening of a new miscellaneous case. *See Silver v. City of San Antonio*, No. 5:19-MC-1095-XR (W.D. Tex. Sept. 11, 2019) (filed

5

pro se motion for leave); *Silver v. Toyota Motor Mfg., Tex., Inc.*, No. 5:19-MC-1397-DAE (W.D. Tex. Dec. 2, 2019) (same); *Silver v. City of San Antonio*, No. 5:19-MC-1450-OLG (W.D. Tex. Dec. 16, 2019) (same); *Silver v. City of San Antonio*, No. 5:19-MC-1490-JKP (W.D. Tex. Dec. 23, 2019) (same); *Synchrony Bank v. Silver*, No. 5:20-MC-0272-JKP (W.D. Tex. Mar. 6, 2020) (filed pro se motion for leave to file notice of removal for state action in which he was sole defendant); *Silver v. Perez*, No. 5:20-MC-0655-JKP (W.D. Tex. June 1, 2020) (filed pro se motion for leave). Random assignment of the cases per standard procedures resulted in a different District Judge for each of the first three cases. The latter three cases are all pending before the undersigned. The initial three cases exhibit different approaches for handling the motion for leave, which is not surprising given that the decision is ultimately within the discretion of the Court, such motions are a rarity in federal court given the nature of the sanction, and courts typically resolve such motions in brief orders thus providing sparse written guidance as to the standard of review.

Silver's first attempt at seeking leave resulted in a quick, summary order denying leave. *See Silver v. City of San Antonio*, No. 5:19-MC-1095-XR, unpub. order (W.D. Tex. Sept. 20, 2019). The Court found the proposed complaint, which sought to sue the City of San Antonio under the Fair Debt Collection Practices Act ("FDCPA"), meritless. *Id*. at 2. After noting that Silver had given no basis to make any determination as to the nature of the debt, it found the conclusory complaint insufficient. *Id*. Given the conclusory nature of the proposed complaint, it found no basis to grant Silver leave to pursue the complaint and reiterated the original sanction warning regarding imposition of monetary sanctions. *Id*. at 3.

Silver's second attempt fared no better. Judge Ezra referred the matter to the randomly assigned Magistrate Judge. To flesh out the proposed complaint to some extent, the Magistrate Judge ordered Silver to submit a more definite statement. *See Silver v. Toyota Motor Mfg., Texas, Inc.*, No. SA-19-MC-1397-DAE, 2020 WL 734481, at *1-2 (W.D. Tex. Feb. 13, 2020) (recom-

mendation of Mag. J.). But even with additional material submitted by Silver, the Magistrate Judge found the proposed complaint frivolous as pleaded and thus recommended denial of leave. *See id.* Over Silver's objection, Judge Ezra adopted the recommendation, found no plausible claim for relief, and denied Silver leave to proceed with the proposed action. *See id.* unpub. order (W.D. Tex. Feb. 28, 2020).

Silver's third motion for leave to commence another federal civil action initially had some limited success. On January 6, 2020, the Honorable Chief District Judge Orlando L. Garcia conditionally granted in part and denied in part the motion for leave. *See Silver v. City of San Antonio*, No. 5:19-MC-1450-OLG, unpub. order (W.D. Tex. Jan. 6, 2020). Although Judge Garcia noted that "there is no legal basis for most of Plaintiff's alleged claims" and "it is apparent that the vast majority of Plaintiff's alleged causes of action are not viable," the Court found sufficient reason to permit Silver to conditionally proceed with his claim based on allegations that property had been taken from him and not returned. *Id.* at 3-4. The Court thus partially granted the motion on the condition that Silver file an amended complaint to assert only that claim. *Id.* at 4-5.

The conditional grant resulted in several filings by Silver and multiple court orders before the Court ultimately denied Silver leave to proceed with the action due to his failure to comply with the conditional grant of permission. *See id.* unpub. order at 2-3 (W.D. Tex. Apr. 16, 2020). In that denial, the Court explained that its order "does not preclude Plaintiff from again seeking relief . . . but Plaintiff should do so only if he is willing and able to (i) comply with court orders and (ii) assert only those claims and allegations that are factually and legally supportable." *Id.* at 3 n.3. The ultimate denial resulted in four additional motions by Silver, including a motion to reopen case, all which the Court denied. *See id.* unpub. order at 2-3 (W.D. Tex. June 1, 2020).

In addition to this case, Silver has two other cases pending before the undersigned in which he seeks leave to pursue new civil litigation in federal court. Contemporaneously with this Memor-

andum Opinion and Order, the Court has denied leave in the other two cases and has directed Silver to show cause why the Court should not impose additional sanctions against him. Notably, briefing in one of the contemporaneous cases has revealed that a Travis County judge has imposed a similar prefiling restriction for state court filings and Silver's name appears on a list of Vexatious Litigants Subject to Prefiling Orders maintained by the Office of Court Administration. *See Synchrony Bank v. Silver*, No. 5:20-MC-0272-JKP (W.D. Tex. Mar. 6, 2020) (ECF No. 3 ¶ 6 n.1 (citing www.txcourts.gov/judicial-data/vexatious-litigants/)).

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Federal courts have inherent powers "deemed necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam). These powers include "the power to levy sanctions in response to abusive litigation practices." *Id*. Furthermore, it is well-established that a recognized "need to curtail further frivolous and malicious filings" provides a legitimate basis for a court to invoke "its general supervisory power to control its docket." *See Green v. Carlson*, 649 F.2d 285, 287 (5th Cir. Unit A 1981) (appending Mem. & Order dated Apr. 27, 1981). Such supervisory power permits courts to place filing restrictions on litigants. *Id.*

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). An "injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). Such restrictions may even be imposed on litigants who proceed without counsel, "for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court

dockets." *Id.* at 359. In addition, it has long been held that courts "impose the least severe sanction adequate" to accomplish the purposes of sanctions, *Akin v. Q-L Invests., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992), which include deterrence, compensation, and punishment. Moreover, it is clearly within a court's discretion to enforce sanctions imposed by other courts. *See Balawajder v. Scott*, 160 F.3d 1066, 1067-68 (5th Cir. 1998) (per curiam).

Due to Silver's prior conduct, Judge Rodriguez of this Court restricted his ability to file civil actions in the San Antonio Division of the Western District of Texas without judicial approval. A proper first step in reviewing a motion for leave to file a civil action is to consider the specific sanction imposed. Here, the sanction order imposes two specific requirements: (1) the filing of a motion for leave to file a new civil action in the San Antonio Division and (2) attaching the proposed complaint. *Silver v. Bemporad*, No. SA-19-CV-0284-XR, 2019 WL 1724047, at *4 (W.D. Tex. Apr. 18, 2019). These are not onerous procedural conditions to satisfy and Silver has satisfied them here even though he labeled his motion for leave as a request. However, satisfaction of all procedural prerequisites set out in the sanction order does not fully open the doors to a new civil action. Satisfaction of these prerequisites merely clears the path for a judge to consider whether the specifics of the proposed new civil action warrants granting Silver leave to pursue his proposed civil action.

By not imposing additional specific requirements on Silver, the sanctioning judge did not limit the broad discretion afforded to review a later proposed new civil action. Because issues regarding sanctions, including whether and how to enforce previously imposed sanctions, are matters vested within their sound discretion, courts have wide latitude in how they approach and handle sanction orders that require an individual to seek leave of court to file a civil action. In general, it is imperative that sanctioned individuals fully disclose all relevant information so that the court can make an informed decision as to whether to permit that individual to proceed with his or her

proposed action. In some cases, this may even require providing documentation to support various elements of asserted claims.

Courts do not lightly impose sanctions that require a litigant to obtain judicial approval before filing future actions. When a court has required a pro se litigant to obtain "permission to file suit" from a judge or court, it has imposed "the most stringent sanction" upon such a litigant. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993). Sanctions requiring judicial approval before filing an action are "designed to avoid the waste of increasingly scarce judicial resources." *Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir. 1990). Of course, such resources have become even more scarce in the thirty years since *Mayfield*. And during that time, Congress has provided several statutory avenues to address abusive litigants by enacting the Prison Litigation Reform Act, including 42 U.S.C. § 1997e (addressing suits by prisoners) and 28 U.S.C. §§ 1915(e) (requiring screening of actions brought *in forma pauperis*) and 1915A (requiring screening of prisoner actions).[2]

Given the harshness of the preapproval sanction, the rarity in which it is imposed, and the recognized purpose to avoid wasting scarce judicial resources, sanctioned litigants often face an uphill battle to obtain requested leave to pursue a new civil action. Nevertheless, courts review each proposed case on its own potential merit, or lack thereof, and it is within the court's discretion as to how stringently it reviews each proposed new case. While a given case may present particularly egregious facts or a legal issue that warrants granting leave to preserve the legitimate rights of the individual seeking leave, courts are well within their considerable discretion to deny leave

---

[2] Although some of these statutes apply only to prisoners, they still exhibit the lengths Congress will go to address abusive practices. For instance, § 1997e contains several provisions to curb prisoner actions in federal court, including subparagraph (a) (requiring prisoners to exhaust available administrative remedies before filing an action); subparagraph (c) (directing courts to screen "any action brought with respect to prison conditions" for frivolousness, maliciousness, failure to state a claim, and immunity); and subparagraph (e) (limiting recovery by requiring "a prior showing of physical injury or the commission of a sexual act").

for procedural infirmities such as a failure to exhaust, apparent untimeliness, and issues with venue or joinder. Naturally, a court may deny leave on more substantive reasons, such as assertion of claims that are merely conclusory, lack merit, or lack sufficient facts to adequately determine whether the claim has merit. A sanctioned individual has no legitimate right to pursue a procedurally defective complaint or one that contains claims that lack a sufficient factual basis to survive screening or a motion to dismiss. A sanctioned individual has no legitimate right to sue defendants without allegations showing their personal involvement.

Reviewing courts must balance the rights of such individual against the need to protect courts and innocent parties from abusive and vexatious litigation. Within the bounds of their broad discretion, courts may apply whatever standard deemed warranted when reviewing the proposed complaint. But in exercising that discretion, courts should remain mindful that court-imposed sanctions are in addition to applicable statutory screening mechanisms like §§ 1915(e), 1915A, and 1997e and statutory sanctions, such as the three strikes provision of 28 U.S.C. § 1915(g).

The statutory screening mechanism of § 1915(e) "gives courts the authority to pierce the veil of the complaint's factual allegations" and "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citation and internal quotation marks omitted). But such screening "cannot serve as a factfinding process for the resolution of disputed facts" and courts may not use such screening to dismiss a complaint "simply because the court finds the plaintiff's allegations unlikely." *Id.* at 32-33.

Naturally, because a judicial preapproval sanction or prefiling injunction typically provides an additional layer of review on actions filed *in forma pauperis* or by prisoners, the review certainly need not even reach the level required by the statutory screening mechanisms. Indeed, were courts to simply apply an already applicable screening requirement instead of a lesser review, they

11

would take much of the bite out of the preapproval sanction and eliminate the time-saving component of the imposed sanction. For a prefiling injunction to have the intended impact, it must not merely require a reviewing official to apply an already existing level of review. Consequently, courts reviewing a sanctioned individual's proposed pleading may appropriately deny leave to file when even part of the pleading fails to satisfy the reviewer that it warrants a federal civil action. And, depending on the circumstances, reviewing courts may deny leave on grounds that the sanctioned litigant's allegations are unlikely. This is especially true when prior cases have shown the litigant to be untrustworthy or not credible or that the litigant previously fabricated facts or exhibited a lack of candor with the courts.

An individual who has abused the judicial process to such an extent as to receive the harsh sanction of judicial preapproval for future actions has no basis to complain if the reviewing court or judge expects procedural compliance in all or nearly all respects, proper venue for the action, proper joinder of parties and claims, non-conclusory factual allegations, and a statement of facts sufficient to survive statutory screening and a motion to dismiss. If significant factual development appears warranted to survive screening, such need may of itself provide a basis for denying leave to file, although it remains within the discretion of a particular reviewing judge to provide an opportunity for further factual development. Furthermore, given the nature of a prefiling injunction, merely satisfying the minimal requirements to survive screening or a motion to dismiss may not always carry a sanctioned litigant's burden to persuade the Court that it should permit a proposed action to be filed.

### III. REVIEW OF PRESENT CASE

Silver commenced this miscellaneous action by submitting his *Request and Order to File New Litigation by Vexatious Litigant* (ECF No. 1) and the Court has construed that filing as a motion for leave. He seeks to file a civil rights action pursuant to 42 U.S.C. § 1983 and for

conspiracy under 18 U.S.C. § 241. Request at 1. Within his motion, he asserts that his new filing

has merit because Officer Cummings exceeded his authority and jurisdiction and

> acted in concert with the remaining Defendant to effect the unlawful loss of Per-
> sonal Properties, liberty, Rights, privileges, or immunities secured by the Constitu-
> tion and laws of the United States of America, the Common Laws and Constitution
> of the Great State of Texas against Silver, Frederick-Omoyuma and shall be liable
> to the party injured in an action at law, suit in equity, or other proper proceeding
> for redress.

*Id*. at 1-2. He also asserts that he is not filing the action to harass or cause delay. *Id*. at 2.

As mentioned, Silver has complied with the minimal requirements for having this Court

review his motion for leave to file the proposed complaint attached to his motion. Of course, the

filing of a civil action also invokes various statutes, the Federal Rules of Civil Procedure, and the

local rules of this Court that govern civil actions. Of particular relevance to this action, Silver has

neither paid the $350 filing fee for commencing a new civil action (plus a required $50 adminis-

trative fee) nor the $47 fee "[f]or filing any document that is not related to a pending case or

proceeding." *See* 29 U.S.C. § 1914(a)-(b); District Court Miscellaneous Fee Schedule (issued in

accordance with § 1914). Nor has he moved to proceed with this action *in forma pauperis* without

prepayment of the fees. *See* 28 U.S.C. § 1915(a). Such deficiencies cut against granting him leave

to pursue his proposed civil action.

But the Court need not rely on such procedural deficiencies to deny leave on the present

motion. The proposed complaint presents substantive reasons for denying leave. Before setting out

those reasons, however, a brief summary of the proposed complaint is warranted.

Silver lists six specific proposed claims: (1) false imprisonment/arrest; (2) intentional in-

fliction of emotional distress; (3) vicarious liability, (4) trespass to personal property, (5) due pro-

cess, and (6) substantive due process. *See* Orig. Compl. ¶¶ 38-51. Prior to those six claims, he

asserts a generic claim against all defendants, pursuant to 42 U.S.C. § 1983, for a Fourth Amend-

13

ment violation; then references the Fifth and Fourteenth Amendments; and finally states in con-clusory fashion that all defendants "acted or failed to act under color of state law"; were "deliber-ately indifferent" to his constitutional rights; "acted in an objectively unreasonable manner when seizing, searching, and using force" with him; and "exercised constitutionally impermissible ex-cessive force. *See id.* ¶ 37. He lists three defendants and appears to assert all claims against each of them. *See id*. ¶¶ 2-4, 37. He asserts jurisdiction under 28 U.S.C. §§ 1331 and 1343(4) while stating that his claims arise under § 1983 and 18 U.S.C. § 241. He sets out his factual allegations in several paragraphs. *Id*. ¶¶ 10-36.

A sampling of Silver's proposed claims reveals substantive reasons for denying him leave to file the proposed complaint. The facts as to his alleged false imprisonment/arrest relate to events on September 14, 2019, when Officer Cummings allegedly acted without jurisdiction or probable cause "[a]t the onset of the unlawful imprisonment at inside plaintiff apartment." *Id*. ¶¶ 13-14. Silver complains that Officer Cummings interrupted his freedom by knocking on his front door and inquiring whether he owned the "White 2011 Mazda . . . parked in the parking lot of the private apartment complex." *Id*. ¶¶ 13-14, 18. When Silver answered "Yes," Officer Cummings informed him that the license plate was a stolen plate, the VIN on the car came back to Silver, and that is why he knocked on the door inquiring about the car. *Id*. ¶ 18. At that point, Silver said that the automobile was unregistered and that he did "not need to provide proof of identification." *Id*. ¶ 19.

When Silver left his apartment, Officer Cummings was parked behind his car causing Sil-ver to ask: "what is the issue at this time?" *Id*. ¶ 20. Officer Cummings ultimately informed Silver that he "was under arrest for having a stolen license plate on [his] vehicle." *Id*. ¶ 25. After taking Silver's identification, Officer Cummings informed Silver that "there was a warrant out for [his] arrest," but would not show Silver the warrant and did not read him his *Miranda* rights before arresting him. *Id*. ¶ 26.

14

Silver has provided the police report from the September 14, 2019 detention and arrest. *See* ECF No. 1-1. The report adds the following information:  (1) the license plate on Silver's vehicle came back "as an active stolen vehicle"; (2) the VIN number on Silver's vehicle did not match the stolen vehicle but showed it was registered to Silver's listed apartment; (3) when Silver left his apartment, he tried to show a receipt without full explanation and when he "opened the door and entered the listed vehicle," the officer states he "had probable cause to detain" Silver; (4) at that point, Silver still refused to identify himself, the officer handcuffed him and checked for weapons, and Silver provided a name and date of birth once the officer indicated he could be charged with "failure to identify"; (5) an identification check revealed four outstanding warrants for Silver which "were verified by the municipal court"; (6) Silver was then "placed under arrest for the listed warrants"; (7) Silver "later explained that he purchased the license plates from an online website" and after the officer verified that Silver's vehicle was otherwise unrelated to the stolen vehicle, the officer advised Silver "to remove the license plates from his vehicle when he was released, not to operate his vehicle with those plates still attached, and to properly register his vehicle with the DMV"; and (8) the officer transported Silver for booking on the listed warrants. *See id.*

As recognized by Silver, a false imprisonment claim requires detention without authority of law. Orig. Compl. ¶ 38. But as reflected in Silver's factual allegations and supported by the police report, Officer Cummings had authority of law to detain and arrest Silver based on the stolen plates on his vehicle and the outstanding arrest warrants. Once Silver's false imprisonment/arrest claim falls, most of his remaining claims unravel due to their association with the false imprisonment/arrest claim. The conclusory excessive force claim appears to stand without need of the false imprisonment/arrest claim, but it too lacks sufficient facts to warrant granting leave to pursue it.

Furthermore, in a prior action, Silver has already demonstrated an unwillingness to properly amend a proposed complaint so as to pursue a particular identified claim.

The Court further notes that, with respect to facts concerning the San Antonio Police Department, Silver's allegations amount to little more than mere recitation of the elements for municipal liability. *See id.* ¶¶ 27-30. Similarly, his assertion of liability under *Monell v. Department of Social Services*, 436 U.S. 653 (1978) is likewise just reciting the elements of such a claim and conclusory claims that field searches are ineffective. *See id.* ¶¶ 34-35. In addition, in a single paragraph, Silver seeks to hold each defendant "vicariously liable," while citing cases for the proposition that a local governmental unit may not be held responsible for acts of its employees under a respondeat superior theory of liability and vicarious liability is inapplicable for suits under § 1983. *See id*. ¶ 33. Finally, Silver's reliance upon § 241 is suspect and his allegations of conspiracy are conclusory.

Based on the above deficiencies regarding the merits of claims that Silver seeks to assert, the Court denies his motion for leave to file the proposed complaint and commence a civil action against the three defendants listed therein.

## IV. PROPRIETY OF ADDITIONAL SANCTIONS

When Judge Rodriguez deemed Silver a vexatious litigant and sanctioned him, Silver was also warned that he could be monetarily sanctioned for filing further frivolous actions or motions. *See Silver v. Bemporad*, No. SA-19-CV-00284-XR, 2019 WL 1724047, at *4 (W.D. Tex. Apr. 18, 2019). Judge Rodriguez reiterated that warning while denying Silver's initial motion/request for leave to pursuant a new civil action. *See Silver v. City of San Antonio*, No. 5:19-MC-1095-XR, unpub. order at 3 (W.D. Tex. Sept. 20, 2019). The Fifth Circuit subsequently dismissed appeals as frivolous and warned Silver "that future frivolous, repetitive, or otherwise abusive filings will invite the imposition of sanctions, which may include dismissal, monetary sanctions, and restrictions

16

on his ability to file pleadings in this court and any court subject to this court's jurisdiction." *Silver v. City of San Antonio*, 799 F. App'x 254, 255 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0349); *Silver v. Bexar Cty. Sheriff's Office*, 800 F. App'x 265, 266 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0561); *Silver v. Toyota Motor Mfg., Texas, Inc.*, 801 F. App'x 304, 305 (5th Cir. 2020) (per curiam) (appeal from Case No. 5:19-CV-0422) (dismissing appeal as frivolous but not issuing a warning of future sanctions).

Not only has Silver filed frivolous appeals since being deemed a vexatious litigant, but he has pursued other litigation that has resulted in dismissed actions and has to date, unsuccessfully sought leave to proceed with new civil actions on three occasions. And that number has doubled with the denial within this Memorandum Opinion and Order and similar ones contemporaneously issued in Silver's two other cases pending before the undersigned. The imposed sanction has clearly not deterred Silver from engaging in further sanctionable conduct.

The Fifth Circuit permits courts to broaden the scope of prefiling injunctions "based on changed factual circumstances." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 188 (5th Cir. 2008). And courts may do so *sua sponte* so long as "the party enjoined is given notice and a hearing." *Id.* at 188-89; *accord Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010). Whether initially imposing or later modifying a prefiling "injunction to deter vexatious filings, a court must weigh all relevant factors," including (1) relevant litigation history, particularly "vexatious, harassing, or duplicative lawsuits"; (2) existence of "a good faith basis for pursuing the litigation" or whether the litigant "simply intended to harass"; (3) the resulting "burden on the courts and other parties" from the litigant's filings; and (4) "the adequacy of alternative sanctions." *Baum*, 513 F.3d at 188 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)). And the district courts have jurisdiction to issue or modify a prefiling injunction even after dismissal of a case. *Qureshi*, 600 F.3d at 526.

Because the undersigned did not issue the initial prefiling injunction, modification of that injunction appears outside the authority of this case. But that does not prevent the undersigned from issuing a similar injunction which incorporates the prior injunction, expands upon it, and imposes new requirements or additional sanctions. For a vexatious litigant, appropriate filing restrictions may include requiring the litigant (1) "to alert state courts of his history of vexatious filings in the federal courts," *Baum*, 513 F.3d at 191 (citing *Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1263 (2d Cir. 1984) with approval) and (2) to inform any federal district court "of pertinent facts concerning the action he seeks to bring, including the existence of the injunction order and of outstanding litigation against the named defendants, and that he obtain leave of that court to file the action," *Martin-Trigona*, 737 F.2d at 1262. The latter restriction expands upon the earlier sanction warning to Silver regarding filing restrictions in any federal district court within the jurisdiction of the Fifth Circuit. Courts may also impose other appropriate sanctions on vexatious litigants. They may impose monetary sanctions for frivolous, duplicative, or otherwise abusive filings, including ordering a monetary sanction paid directly to the clerk of this court "for deposit into the Treasury of the United States." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986).

In light of Silver continuing to engage in sanctionable conduct, the Court will order him to show cause why it should not further sanction him by expanding upon the original prefiling injunction and imposing other sanctions such as:

> (1) Extending the current prefiling injunction to any federal district court or any federal district court within the jurisdiction of the Fifth Circuit.

> (2) Expressly extending the current injunction to apply to actions commenced by Silver and removed from state court or transferred from another federal court. Although the existing state prefiling injunction imposed against Silver may lessen the need for such extension in the removal context, it does not eliminate the need. Such extension would likely require some modification of the federal prefiling injunction in such a removal or transfer context. The injunction could be modified as follows:

18

Unless the receiving court orders otherwise, Silver may file a motion to remand in a removed action without obtaining separate leave of court. If a motion to remand is improper under the circumstances or if the receiving court so orders, Silver shall ask for judicial approval to continue with the removed action while complying with all aspects of the prefiling injunction (except for the need to file a proposed complaint) as extended and supplemented by any court order.

(3) In addition to requiring the filing of a motion for leave with an accompanying proposed complaint, an expanded injunction could require Silver to also:

(a) Pay the appropriate filing fee ($47 or $350 depending on whether the court opens a civil or miscellaneous action upon the filing of the motion for leave)[3] plus the $50 administrative fee for civil actions or a motion to proceed *in forma pauperis*.

(b) File a "Notice Regarding Sanctions," which will identify by case number and order date (i) every sanction imposed upon Silver and (ii) every sanction warning issued to him, whether by a federal or state court.

(c) File as an attachment to the "Notice Regarding Sanctions," a copy of each order that imposes sanctions or issues a sanction warning.

(d) File as an appendix, documentation to support any claim requiring the showing of an injury.

(4) Requiring Silver to alert state courts of his history of vexatious federal filings.

## V. CONCLUSION

For the foregoing reasons the Court **DENIES** the *Request and Order to File New Litigation by Vexatious Litigant in Western District Court* (ECF No. 1); **DENIES** the *Motion on Case Status* (ECF No. 2); **DENIES** *Plaintiff's Motion to Amend Case Caption* (ECF No. 3); and **DENIES** *Plaintiff's Motion for Action on this Case* (ECF No. 4). The latter three motions are unnecessary, and Silver has not carried his burden to persuade the Court that he should be permitted to pursue the complaint attached to his motion for leave. In addition, the Court finds that Silver has continued

---

[3] Some courts open a civil action in similar situations, whereas Silver's litigation history shows that miscellaneous cases are opened on such filings.

to engage in sanctionable conduct and thus orders him to show cause **on or before July 21, 2020,** why the Court should not further sanction him by expanding upon the original prefiling injunction and imposing other sanctions. **The Court instructs the Clerk of Court to mail this Memorandum Opinion and Order to Silver via certified mail, return receipt requested.**

**SIGNED this 7th day of July 2020.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**